UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CHEMICAL SOCIETY, et al., <br><br> Plaintiff(s), <br><br> v. <br><br> GREG WILSON KESSLER, <br><br> Defendant(s). | No. C02-5616 BZ <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ENTRY OF CIVIL CONTEMPT** |

    Plaintiffs sued defendant in November 2002 alleging nine instances of copyright infringement.[1]  Defendant operates a business known as a "document delivery service," and plaintiffs alleged that he was delivering unauthorized copies of articles from plaintiffs' scientific journals and other copyrighted works to his customers.

    The parties settled the dispute in October 2004 and filed a stipulated dismissal with the court, which provided that the court would retain jurisdiction over the matter in order to

---

[1] All parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) for the purpose of enforcing the settlement agreement.

1

enforce the settlement agreement.  The settlement agreement required defendant to make monthly payments of $1000 for forty months and required ongoing copyright compliance with respect to plaintiffs' articles.  It also entitled plaintiffs to file a consent judgment in the event of defendant's breach of the agreement.

Asserting that defendant violated the settlement agreement by failing to make the required payments and by continuing to deliver plaintiffs' copyrighted works in PDF format, plaintiffs filed a motion for entry of the consent judgment, which the court granted in September 2005.  The consent judgment required defendant to make a further monetary payment of $159,000.  It permanently enjoined defendant from reproducing or distributing publicly any of plaintiffs' works.[2]  It also required defendant to post a notice on his website explicitly stating that he was unable to supply copies of plaintiffs' and their affiliates' copyrighted works.[3]

---

[2] The injunction reads as follows:

> Defendant and his agents, servants, employees, and attorneys, and all those in active concert or participation with them who receive actual notice this order [sic], are hereby permanently enjoined from reproducing all or any part of any work in which copyright is owned by any of the plaintiffs, and from distributing publicly, as such term is defined in 17 U.S.C. § 101, any copy of all or any part of any work in which copyright is owned by any of the plaintiffs.

Consent J. and Order ¶ 3.

[3] The consent judgment requires the following notice be posted on defendant's website verbatim:

> Notice to Users:  We are unable to supply you with copies of any article, chapter, or other

2

Plaintiffs now move for an entry of civil contempt against defendant for his violation of the consent judgment. "The standard for finding a party in civil contempt is well settled: the moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." F.T.C. v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999). The burden then shifts to defendant to show why he was not able to comply. Id. He must show he took every reasonable step to comply. Stone v. City and County of San Francisco, 968 F.2d 850, 856 n.9 (9th Cir. 1992).

Plaintiffs presented evidence, which defendant did not dispute, that in February 2006, they asked an independent party, Kerri McCullough, to order copies of copyrighted works from defendant. Defendant provided the copyrighted works to McCullough. Plaintiffs contacted defendant the next month and demanded that he comply with the consent judgment. Defendant did not respond. In June 2006, plaintiffs again caused McCullough to order copyrighted documents from defendant, and defendant again provided the documents. Defendant does not dispute this, nor does he dispute that he failed to post the

---

> portion of any work in which copyright is owned by Elsevier, Inc. or its affiliates, Wiley Periodicals, Inc. or its affiliates, or the American Chemical Society. If you are in doubt as to whether a particular publication is covered by this notice, lists of the titles published by these publishers may be viewed at www.elsevier.com, www.wiley.com and www.acs.pubs.org.

Consent J. and Order ¶ 4.

notice about plaintiffs' and their affiliates' copyrighted works on his website as required by the consent judgment.

Defendant does deny that he violated the consent judgment when he provided the works to McCullough because, he asserts, plaintiffs did not own the copyright to any of those works; they were owned by plaintiffs' affiliates. While plaintiffs are correct that the intent of the underlying settlement and consent judgment was to benefit plaintiffs and their affiliates, the fact remains that paragraph 3 of the consent judgment is literally limited to works whose copyright is owned by plaintiffs. Given the high standard of proof that plaintiffs face to establish contempt, I find that they have not established by clear and convincing evidence that defendant violated a specific and definite order of the court.

Plaintiffs claim that one of the four works distributed to McCullough is clearly copyrighted by one of the plaintiffs. They point to the front page of the article which has a copyright symbol next to the words "Elsevier Science (USA). All rights reserved." Plaintiffs, however, bear the burden of proving that defendant violated the consent judgment by clear and convincing evidence, and it is not clear who holds the copyright to the article. Included in plaintiffs' reply is a search record result from the U.S. Copyright Office's online database of registrations, which lists one of plaintiffs' affiliates' as the copyright owner. Plaintiffs have therefore failed to establish by clear and convincing evidence that

1  defendant violated paragraph 3 of the consent judgment.[4]

2      As for his admitted failure to post the required notice
3  on his website, defendant apologizes to the court and points
4  out that he has since voluntarily shut down his website and is
5  not accepting orders through it.  He also states that he did
6  post a notice that he cannot supply certain publications due
7  to copyright restrictions.  This notice, he claims, is less
8  restrictive and onerous than the language in the consent
9  judgment because it does not require his customers to consult
10 three websites before ordering from him.  To place a burden on
11 his consumers to check plaintiffs' websites, he asserts, would
12 mean that the majority of his customers would go to other
13 document delivery services.  Kessler Decl. ¶ 4.

14     It is not clear that the required notice places any
15 burden on defendant's customers and forces them to check
16 plaintiffs' websites.  The required notice merely offers
17 website addresses for customers to consult if they are in
18 doubt as to whether a particular publication is available for
19 purchase through defendant's website.  More importantly, the
20 notice requirement was negotiated by the parties, through
21 counsel, as part of a settlement of plaintiffs' infringement
22 claims against defendant.  Defendant and his attorney both
23 signed the settlement agreement, which attached the consent

---

[4] Having accepted defendant's argument that plaintiffs' affiliates' works are not included in paragraph 3 of the consent judgment, the court need not address defendant's claims that he had a good-faith belief that the works he distributed were not plaintiffs' copyrighted works because he searched Melvyl (University of California's Online Union Catalog), which does not identify any of the plaintiffs as the publisher or copyright owner.  Kessler Decl. ¶ 3.

judgment as an exhibit.  If defendant wanted different language, such as the notice he did put on his website, he should have negotiated for it.

In any case, defendant concedes that he has violated paragraph 4 of the consent judgment.  The terms of the consent judgment are clear, and defendant did not comply with it and the court's order.  He has not established that he took every reasonable effort to comply, and his willful violation requires the imposition of sanctions.

Plaintiffs seek sanctions that reflect statutory damages under 17 U.S.C. § 504, in the amount of $600,000.  See Rebis v. Universal CAD Consultants, Inc., No. C-96-4201 (SC), 1998 WL470475, at * 4 (N.D. Cal. Aug. 11, 1998)("In fashioning relief for a motion for contempt, a court may look to the amount of statutory damages that would be available for a violation.").  However, I am not sanctioning defendant for distributing copyrighted works; only for failing to post the notice.

At the same time, I cannot ignore defendant's history of infringing plaintiffs' copyrights and his apparent lack of concern for the terms of either the settlement agreement or the consent judgment.  The 2002 complaint, the 2004 settlement agreement and the 2005 consent judgment gave defendant notice that he was infringing plaintiffs' and their affiliates' copyrights and that he was to stop distributing their works. Furthermore, in March 2006, after he first provided documents to McCullough, plaintiffs sent defendant a letter reminding him that he was permanently enjoined from reproducing or

distributing publicly any of plaintiffs' works and that he was required to post a notice on his website.  Defendant's actions leave me with the impression that he was exploiting a technicality in paragraph 3 of the consent judgment to continue to distribute plaintiffs' affiliates' copyrighted works.  In light of this history, damages are necessary for deterrence purposes, and I therefore sanction defendant in the amount of $5,000.

In addition to monetary sanctions, plaintiffs seek injunctive relief to prevent defendant from unlawfully distributing their copyrighted works in the future.  Specifically, they request that defendant be ordered to take down his website and refrain from maintaining similar websites in the future.  Unfortunately, this issue is not well-briefed, and all of plaintiffs' cases are inapposite.  Both <u>AFM Corporation v. Therma Panel Homes Corporation</u>, No. 00-CV-0055E (SC), 2002 WL 1477622, at *2 (W.D.N.Y. June 28, 2002) and <u>Garden of Life, Inc. v. Letzer</u>, No. CV-04-2619 AHM (MANX), 2004 WL 1151593, at * 1 (C.D. Cal. May 17, 2004) involved websites that were directly infringing plaintiffs' intellectual property rights either because their domain names or website content were infringing.  That is not the case here, since defendant's website does not by itself infringe plaintiffs' or their affiliates' copyrights.  Shutting down defendant's website does not ensure compliance with the consent judgment, since, as plaintiffs point out, defendant could still violate the consent judgment by distributing plaintiffs' and their affiliates' copyrighted works in

response to e-mail or telephone orders. Also, <u>AFM</u> involved a preliminary injunction, and the court issued a temporary restraining order calling for removal of defendants' websites until such time as the matter could be decided at a scheduled evidentiary hearing. Granting plaintiffs' request here would be an open-ended or permanent injunction. Plaintiffs also cite <u>In re Davis</u>, 334 B.R. 874 (Bank. W.D. Ky. 2005) in support of their position, but the district court subsequently reversed the injunction issued by the bankruptcy court in that opinion on the grounds that it was overly broad and unduly trampled appellants' right to publish. <u>See</u> <u>In re Davis</u>, No. 06-88-C, 2006 WL 2355849, at * 3-4 (W.D. Ky. Aug. 14, 2006). The court can find no other authority to support plaintiffs' request to order defendant to shut down his website and refrain from maintaining similar websites. Such request is not narrowly tailored to address defendant's violations and is therefore **DENIED**.[5] However, in the exercise of the broad power the court has to remedy a breach of an injunction or consent judgment, as a further sanction defendant will be enjoined prospectively from distributing any works in which the copyright is owned by any of the plaintiffs' affiliates. <u>See</u> <u>Rebis</u>, 1998 WL 470475, at * 5.

For the reasons outlined above, **IT IS ORDERED** as follows:

---

[5] In their proposed order, plaintiffs also request that defendant's Internet Service Provider be served with a copy of this order and be ordered to take down defendant's website upon their request in the event that defendant does not comply. Plaintiffs have not briefed this request, and the court will not grant it partly on the grounds that it is premature and inappropriate to include non-parties at this time.

1. that plaintiffs' motion for entry of civil contempt against defendant is **GRANTED in part** and **DENIED in part**;

2. that defendant is in contempt of the Consent Judgment and Order dated October 17, 2005 and sanctioned in the amount of $5,000;

3. that plaintiffs' motion for an order requiring defendant to remove his website from the Internet and refrain from maintaining any similar websites is **DENIED**; and

4. that pursuant to my broad remedial power, to prevent any future attempt by defendant to exploit any inartfully crafted language in the consent judgment, paragraph 3 of such consent judgment is modified prospectively to include plaintiffs' affiliates' works in the injunction.

Dated:   September 12, 2006

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\AMERICAN CHEMICAL\CIVIL.CONTEMPT.ORD4.wpd